**FILED**
**CLERK**

12:08 pm, Mar 31, 2017

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
LUZ CELENIA NEGRON,

                    Plaintiff,

          -against-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                   Defendant.
-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
15-cv-2515 (ADS)(AKT)

**APPEARANCES:**

**Law Office of Sharmine Persaud**
*Attorney for the Plaintiff*
1105 Route 110
Farmingdale, NY 11735-4818
      By:    Sharmine Persaud, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Candace Scott Appleton, Assistant United States Attorney

**SPATT, District Judge**:

On May 1, 2015, the Plaintiff Luz Celenia Negron (the "Plaintiff" or the "claimant") commenced this civil action pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant Acting Commissioner of Social Security Carolyn W. Colvin (the "Defendant" or the "Commissioner"), that she is ineligible to receive Social Security disability insurance benefits.

On October 5, the Court referred the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) to Magistrate Judge A. Kathleen Tomlinson.

Presently before the Court are the Defendant's objections to the February 21, 2017 Report and Recommendation (the "R&R") of Judge Tomlinson. Upon a *de novo* review, the Court denies the Plaintiff's motion in its entirety; and grants the Defendant's motion in its entirety.

## I. BACKGROUND

### A. The R&R

Relevant here, the R&R found that Administrative Law Judge Andrew S. Weiss (the "ALJ") failed to consider the effects of the Plaintiff's obesity in rendering his determination that the Plaintiff's impairments did not meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ erred in affording "little weight" to the medical opinions of the Plaintiff's treating physicians, Dr. Richard Parker ("Dr. Parker") and Dr. Michael Nicolosi ("Dr. Nicolosi") "without conducting any investigation into the omissions or inconsistencies arising from their opinions," (R&R at 55); and the ALJ erred in relying upon the single decision makers (the "SDMs") when determining the Plaintiff's residual functional capacity ("RFC").

For those reasons, the R&R recommended that the Court deny the Defendant's motion for judgment on the pleadings pursuant to Rule 12(c); grant, in part, the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c); and remand the proceedings to the Commissioner for further proceedings consistent with those rulings.

### B. The Defendant's Objections

On March 7, 2017, the Defendant filed timely objections to the R&R. See FED. R. CIV. P. 72 ("[a] party may serve and file objections to the order within 14 days after being served with a copy."). The Defendant argues that the R&R incorrectly applied the substantial evidence standard to the ALJ's decision; the ALJ was not under any duty to recontact Dr. Parker or Dr. Nicolosi because their medical opinions were not supported by substantial evidence; the ALJ did not rely

on the determinations of the SDMs in determining the Plaintiff's RFC; and the ALJ factored obesity into his RFC determination through the evaluation of medical records that indicated the Plaintiff's weight but failed to provide any evidence that her obesity limited her function further than the ALJ found.

## C. The Plaintiff's Arguments

The Plaintiff did not object to any of the R&R's findings. The Plaintiff urges the Court to adopt the R&R in its entirety. She argues that the ALJ failed to properly apply the treating physician rule to the opinions of Drs. Nicolosi and Parker; that the ALJ was bound to seek clarification from those doctors; and that the ALJ improperly relied on the SDMs' assessments in rendering his RFC.

## II. DISCUSSION

## A. District Court Review of a Magistrate Judge's R&R

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise objections to the magistrate judge's report and recommendation, but they must be "specific," "written," and submitted "[w]ithin 14 days after being served with a copy of the recommended disposition." FED. R. CIV. P. 72(b)(2); *accord* 28 U.S.C. § 636(b)(1)(C). A district court must conduct a *de novo* review of those portions of the R&R or specified proposed findings or recommendations to which timely and proper objections are made. 28 U.S.C. § 636(b)(1)(C); *see* FED. R. CIV. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."). The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is

apparent from the face of the record. *Lewis v. Zon,* 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008); *Nelson v. Smith,* 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

In addition, "[t]o the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.,* No. 07–CV–6865, 2008 WL 4810043, at *1 (S.D.N.Y. Oct. 31, 2008); *see also Toth v. N.Y. City Dep't of Educ.*, No. 14CV3776SLTJO, 2017 WL 78483, at *7 (E.D.N.Y. Jan. 9, 2017) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." (quoting *Ortiz v. Barkley,* 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008))). "The goal of the federal statute providing for the assignment of cases to magistrates is to increase the overall efficiency of the federal judiciary." *McCarthy v. Manson,* 554 F. Supp. 1275, 1286 (D. Conn. 1982), *aff'd,* 714 F.2d 234 (2d Cir. 1983) (quoting *Nettles v. Wainwright,* 677 F.2d 404, 410 (Former 5th Cir. 1982) (en banc)) (footnote omitted). "There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." *Toth*, 2017 WL 78483, at *7 (quoting *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan,* 806 F. Supp. 380, 382 (W.D.N.Y. 1992)).

**B. Judicial Review of an ALJ's Decision**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 475, 478 (E.D.N.Y. Nov. 16, 1998) (Spatt, *J.*) (citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)).

Thus, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.*, and therefore, the relevant question is not "whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). The standard is "even more [deferential] than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448 (citing *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)). This deferential standard applies not only to factual determinations, but also to inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 U.S. Dist. LEXIS 21427, at *20 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

In this context, " '[s]ubstantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 337, 340

(E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998), for the proposition that an ALJ's decision may be affirmed where there is substantial evidence for both sides).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

## C. Applicable Law

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Burgess*, 537 F.3d at 119 (quoting 42 U.S.C. § 423(d)(1)(A)) (quotation marks omitted). In addition, "[t]he impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater,* 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The claimant bears the burden of proving the first four steps, but then the burden shifts to the Commission at the fifth step. *Rosa,* 168 F.3d at 77. First, the Commissioner considers whether the claimant is presently working in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); *Rosa,* 168 F.3d at 77. If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Rosa,* 168 F.3d at 77. If

the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Rosa*, 168 F.3d at 77. If the claimant has such an impairment, there will be a finding of disability. If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's residual functional capacity allows the claimant to perform his or her past work. 20 C.F.R. § 404.1520(a)(4)(iv); *Rosa*, 168 F.3d at 77. Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work" discussed *infra*, that the claimant could perform, taking into account, *inter alia*, the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Rosa*, 168 F.3d at 77.

## D. The Treating Physician Rule

"The method by which the Social Security Administration is supposed to weigh medical opinions is set forth in 20 C.F.R. § 404.1527(c) [which has the same analytical framework as 20 C.F.R. § 416.927]." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Relevant here, "[t]he regulations say that a treating physician's report is generally given more weight than other reports and that a treating physician's opinion will be controlling if it is 'well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record.' " *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).

This rule — the "Treating Physician Rule" — reflects the generally-accepted view that "the continuity of treatment [a treating physician] provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (quoting *Mongeur*, 722 F.2d at 1039 n.2

(internal quotation marks omitted)); *see Genier v. Astrue*, 298 F. App'x. 105, 108 (2d Cir. 2008) (noting that the regulations recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment" (quoting 20 C.F.R. § 416.927(d)(2))).

Generally, where the ALJ declines to give controlling weight to a treating physician's opinion, he must provide the claimant with "good reasons" for doing so, and must consider various factors to determine how much weight to give the opinion. *See Blanda v. Astrue*, No. 05-cv-5723, 2008 U.S. Dist. LEXIS 45319, at *18, 2008 WL 2371419 (E.D.N.Y. June 9, 2008); 20 C.F.R. § 404.1527(c)(2). In particular, "to override the opinion of the treating physician, [the Second Circuit] ha[s] held that the ALJ must explicitly consider, *inter alia*, (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129).

Where a treating physician's opinion is contradicted by substantial evidence in the record, the opinion will not be afforded controlling weight. *Snell,* 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling."). Additionally, findings that "a claimant is disabled and cannot work . . . are reserved to the Commissioner," and a treating physician's opinion on these points is not afforded controlling weight. *Id.* at 133 (internal citations omitted); *see also* 20 C.F.R. § 404.1527(e)(1). Thus, the ALJ "considers the data that physicians provide but draws [his or her] own conclusions as to whether those data indicate disability ." *Snell,* 177 F.3d at 133.

### E. Application to the Facts

Initially, the Court notes that the Defendant's objections are timely and proper in that they were filed within fourteen days of the R&R, and the objections argue that the R&R incorrectly applied the law. Therefore, the Court will review those portions of the R&R to which the Defendant objects *de novo*.

### 1. As to whether the ALJ Considered the Effects of the Plaintiff's Obesity in Determining the Plaintiff's RFC

The Defendant argues that the ALJ implicitly factored the Plaintiff's obesity into his RFC determination by considering medical reports that discussed the Plaintiff's obesity. The Plaintiff does not respond to this argument in any meaningful way, nor did the Plaintiff raise this argument in her original motion papers. The Court agrees with the Defendant that the ALJ sufficiently considered the Plaintiff's obesity when making his RFC determination.

"Obesity may be considered 'severe'—and thus medically equal to a listed disability—if 'alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities.'" *Browne v. Comm'r of Soc. Sec.*, 131 F. Supp. 3d 89, 102 (S.D.N.Y. 2015) (citing Social Security Ruling ("SSR") 02–1p, Titles II and XVI Evaluation of Obesity, 67 Fed. Reg. 57859, 57861–62 (Sept. 12, 2002)). Thus, an ALJ must consider the effects of obesity when evaluating disability. *See* SSR 00–3p, Titles II and XVI Evaluation of Obesity, 65 Fed. Reg. 31039, 31039 (May 15, 2000).

However, "obesity is not in and of itself a disability," and "an ALJ's failure to explicitly address a claimant's obesity does not warrant remand." *Guadalupe v. Barnhart,* 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (internal citations omitted). "[W]here the record contains evidence indicating limitation of function due to obesity, the ALJ must consider the effect

of obesity on the claimant's ability to do basic work activities at steps two through four of the sequential evaluation process." *Battle v. Colvin,* 2014 WL 5089502, at *5 (W.D.N.Y. Oct. 9, 2014) (internal citations omitted). "Conversely, the ALJ's obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities." *Id.* (quoting *Farnham v. Astrue,* 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011)) (citing cases); *accord Cahill v. Colvin,* 2014 WL 7392895, at *27 (S.D.N.Y. Dec. 29, 2014).

Here, the ALJ acknowledged these requirements and noted that "former treating physician Jay W. Eneman, M.D., has indicated that the claimant has '[] moderate obesity causing primary low back discomfort and strain.'" (R. at 16 (internal citations omitted)). This acknowledgement was made immediately before a discussion of the Plaintiff's RFC. Dr. Eneman's notes appear to be the only notes that reference the Plaintiff's obesity as a contributing factor. Several medical reports list her weight and body mass index ("BMI"). Therefore, by analyzing and relying on the objective medical evidence that referenced the Plaintiff's weight, as well as the only medical notes that believed that the Plaintiff's obesity contributed to her impairments, the ALJ implicitly factored the Plaintiff's obesity into his RFC determination. *See Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) ("[W]e agree with the District Court that the ALJ implicitly factored [the plaintiff]'s obesity into his RFC determination by relying on medical reports that repeatedly noted [the plaintiff]'s obesity and provided an overall assessment of her work-related limitations."); *Snyder v. Comm'r of Soc. Sec.*, No. 8:14-CV-0328 GTS, 2015 WL 6619929, at *4 (N.D.N.Y. Oct. 30, 2015) ("The ALJ discussed the medical records from Plaintiff's primary care providers and chiropractor, thus implicitly factoring in Plaintiff's obesity."), *aff'd sub nom. Snyder v. Colvin*, No.

15-3502, 2016 WL 3570107 (2d Cir. June 30, 2016); *Johnson v. Colvin*, No. 14-CV-2334 CM JLC, 2015 WL 400623, at *12 n.12 (S.D.N.Y. Jan. 30, 2015), ("Where, as here, an ALJ cites to medical records that discuss a claimant's weight and reaches a conclusion in accord with those medical records, some courts have found that an ALJ may be considered to have implicitly factored the claimant's obesity into his determination.") (collecting cases) (internal citations and quotation marks omitted) *report and recommendation adopted*, No. 14-CV-2334 CM JLC, 2015 WL 3972378 (S.D.N.Y. June 1, 2015); *Restuccia v. Colvin*, No. 13 CIV. 3294 RMB, 2014 WL 4739318, at *5 (S.D.N.Y. Sept. 22, 2014) ("[T]he ALJ implicitly factored [the plaintiff]'s obesity into her RFC determination by relying on medical reports that repeatedly noted [the plaintiff]'s obesity and provided an overall assessment of his work-related limitations.") (internal alterations, citations, and quotation marks omitted).

Therefore, the Court finds that the ALJ appropriately factored the Plaintiff's obesity into his RFC determination.

### 2. As to Whether the ALJ Correctly Applied the Treating Physician Rule

Although the Defendant's main argument is that the R&R incorrectly applied the substantial evidence rule, the Court must first address whether the ALJ correctly applied the treating physician rule. The R&R did not address whether the ALJ's decision was supported by substantial evidence, because it found that the ALJ had committed legal error that required remand. Namely, that the ALJ failed to properly apply the treating physician rule. The Defendant argues that the ALJ correctly applied the treating physician rule because the Plaintiff's physicians' opinions were contradicted by substantial evidence. The Plaintiff contends, in opposition, that the ALJ failed to acknowledge evidence that supported the physicians' opinions. The Court finds that the ALJ correctly applied the treating physician rule.

The ALJ gave Dr. Parker's medical source statement of October 4, 2013 little weight. In that statement, Dr. Parker claimed that the Plaintiff could only occasionally carry up to 10 pounds; sit for about 4 hours; stand or walk for about 2 hours; stoop or crouch 20% of the time; and be allowed to shift positions at will over the course of an 8-hour day. Dr. Parker further stated that the Plaintiff would be absent from work about 2 days per month.

The ALJ found that Dr. Parker's opinion was inconsistent with the doctor's own notes, which "indicate[d] that the claimant ha[d] intact muscle strength and b[ore] no mention of difficulty with ambulation." (R. at 19). Although Dr. Parker listed the Plaintiff's "persistent signs and symptoms" as pain and muscle spasms, he noted that there was no motor loss; and he did not check off any other listed signs on the form—which included abnormal gait, reflex changes, muscle weakness and muscle atrophy. Dr. Parker did not offer an opinion as to how long the Plaintiff would have these limitations. However, in his notes, he stated that epidural injections and physical therapy would relieve the Plaintiff's pain and improve her flexibility and mobility. As the ALJ noted, "[y]et, in the medical source statement, he bears no mention of the fact that conservative measures were expected to relieve the claimant's pain." (*Id.*).

The ALJ similarly assigned little weight to a medical source statement from Dr. Nicolosi dated November 20, 2013. Dr. Nicolosi believed that the Plaintiff required the following limitations: frequently carrying and lifting less than 10 pounds; occasionally carrying 10 pounds; sitting for 5-10 minutes at a time; standing for 5-10 minutes at a time; sit/stand/walk less than 2 hours; stooping for 5% of the time; crouching 5% of the time; and allowed to shift positions at will over the course of an 8 hour workday. Dr. Nicolosi further opined that the Plaintiff would be absent from work more than 4 times a month; that she required an assistive device to walk; and

that her pain would frequently interfere with her concentration and attention; and that his prognosis was guarded.

The ALJ held that Dr. Nicolosi's medical opinion "lacks evidentiary support," (*id.*), and was contradicted by Dr. Nicolosi's own notes. Specifically, the ALJ referenced Dr. Nicolosi's notes that the Plaintiff does not use an assistive device when walking; that the Plaintiff had "excellent greater than 80% pain relief" after her third steroid injection; and the Plaintiff had no strength deficits except for a weakness in her left first toe. The ALJ also included **a** footnote which stated that

> [w]hen asked how long the claimant can sit and stand/walk total over an 8-hour workday, Dr. Nicolosi indicate[d] 'less than 2 hours,' but d[id] not specify to which function he [wa]s referring. In any event, an opinion that the claimant cannot sit for 2 hours total or that she could not stand/walk for 2 hours total would be inconsistent with the objective evidence and subjective credibility factors discussed herein.

(R. at 19).

The Second Circuit has repeatedly held that ALJs may give a treating source's medical opinion less weight where it contradicts their own treatment notes. *See, e.g., Monroe v. Comm'r of Soc. Sec.*, -- F. App'x --, No. 16-1042-CV, 2017 WL 213363, at *3 (2d Cir. Jan. 18, 2017) (summary order) (holding that a court can give less weight to a treating source's medical opinion where the treatment notes contradict the opinion); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (holding that the treatment notes of other doctors can be relied upon to override the medical opinion of a treating physician); *Legg v. Colvin*, 574 F. App'x 48, 49 (2d Cir. 2014) (summary order) (holding that the ALJ did not err when she discounted the treating physician's opinion because, *inter alia*, the physician's "own treatment notes did not support the diagnoses and serious functional limitations contained in his statements" (citing *Halloran,* 362 F.3d at 32); *Cichocki*, 534 F. App'x at 75 (summary order) (holding that ALJ not required to give

controlling weight to treating physician's medical opinion where the treatment notes contradicted that opinion).

Similarly, as stated above, a treating source's opinion need not be afforded controlling weight where it is contradicted by substantial evidence. *Snell,* 177 F.3d at 133.

Here, as the ALJ found, the treating physicians' opinions were contradicted by substantial evidence, including their own treatment notes. Beyond the plain inconsistencies in the treating physicians' treatment notes noted by the ALJ, there was other substantial evidence that did not support their opinions.

First, the medical evidence, or the lack of medical evidence at certain times, contradicts the treating physicians' opinions. Although the Plaintiff alleges that she has been unable to work because of lower back pain since October 15, 2008, her first report of back pain was in August 5, 2009. Dr. Harish Sood, who treated the Plaintiff for almost a year beginning on August 10, 2009, classified the Plaintiff's back pain as "mild discomfort" later that same month. When Dr. Benjamin Uh, an orthopedist, ordered physical therapy and told the Plaintiff to obtain an MRI in April 2010, the Plaintiff did neither. Between May 24, 2010, and March 15, 2012, the Plaintiff did not receive *any* treatment for low back pain. When the Plaintiff saw Dr. Uh in February 7, 2011, she *specifically* stated that she did not have low back pain. Although the Plaintiff attended six sessions of physical therapy in August and September of 2012, at which time Dr. Eneman noted the Plaintiff only had mild to moderate discomfort in her lower back, she did not follow through on Dr. Eneman's prescription for further physical therapy. Dr. Eneman treated the Plaintiff for approximately eight months in 2012 and 2013, and recommended a "conservative" course of treatment. Dr. Steiner, who treated the Plaintiff from March 15, 2012 to June 13, 2012, noted that she had a normal gait; 5/5 motor strength; despite noting a limited range of motion in her spine.

In May 2013, Dr. Parker found that the Plaintiff could stand on her heels and toes; her straight leg raises were negative, and all of her leg muscles were intact. The Plaintiff told Dr. Nicolosi in September 2013 that she had never taken pain medication. Finally, the November 2013 lumbar MRI revealed that there was no herniation; although it did show diffuse degenerative disc disease.

The Plaintiff's own statements also contradict the physicians' medical opinions. The Plaintiff stated in her function report that she goes outside 2 to 3 times a week; drives; travels alone on occasion; goes food shopping once a month; and goes shopping for clothes once every other month. The Plaintiff testified that she bathes her daughter and performs other childcare; does light housework; sometimes drives locally; and is able to shop alone for small things that are not heavy.

Therefore, the Court finds that there was substantial evidence that contradicted the treating physicians' medical opinions.

The Court also finds that the ALJ sufficiently applied the substance of the treating physician rule when he afforded little weight to the opinions of Drs. Parker and Nicolosi. Although the ALJ did not explicitly consider the factors mentioned above, *see Selian*, 708 F.3d at 418, the Court "deduce[s] that the ALJ considered the treating physician's opinion and explained the consistency of [the treating physicians'] opinion[s] 'with the record as a whole,'" and therefore "the ALJ applied the substance of the treating physician rule," *Halloran*. 362 F.3d at 31–32 (citing 20 C.F.R. § 404.1527(d)(4)). In *Halloran*, faced with similar circumstances, the Second Circuit conducted "a searching review of the record to assure [that the claimant] received the rule's procedural advantages." *Id.* Although the court noted that it does not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion," *id.,* because the court found that the ALJ nonetheless "applied the substance of the treating physician rule," *id.*, the court found no reason to remand because "the substance of the

treating physician rule was not traversed." *Id.* at 32–33; *see also Camille*, 652 F. App'x at 28 (stating that "[a]lthough the ALJ did not describe in detail her rationale, we can infer from the decision" the weight she attributed to each doctor's opinion"); *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("Finally, [the plaintiff] challenges the ALJ's failure to review explicitly each factor provided in 20 C.F.R. § 404.1527(c). We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."); *Petrie,* 412 F. App'x at 406 ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." (internal citations and quotations omitted)); *Fontanarosa v. Colvin*, No. 13-cv-03285, 2014 WL 4273321, at *9 (E.D.N.Y. Aug. 28, 2014) ("[T]he ALJ is not required to explicitly discuss the factors, but it must be clear from the decision that the proper analysis was undertaken."); *compare Sanders v. Comm'r of Soc. Sec.,* 506 F. App'x 74, 77 (2d Cir. 2012) (summary order) (stating that failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand").

Here, the ALJ laid out the objective medical evidence that weighed against the medical opinions of Drs. Nicolosi and Parker and gave good reasons for affording them little weight. He also acknowledged several facts that illustrate that he considered the factors listed above. He noted that the two doctors were specialists—he explicitly stated Dr. Parker was an orthopedist and Dr. Nicolosi was a "DO," or doctor of osteopathy. The ALJ noted the first dates upon which the Plaintiff presented to the two doctors—Dr. Parker on May 14, 2013; and Dr. Nicolosi on September 26, 2013. Dr. Parker completed a questionnaire only five and a half months after beginning treatment; and Dr. Nicolosi completed one approximately two months after first meeting

the Plaintiff. The ALJ noted that that the Plaintiff had seen Dr. David Steiner twelve times in 2012, and that Dr. Steiner noted that despite her problems she had a normal gait and 5/5 motor strength. The ALJ even included the medical evidence that supported the treating physicians' opinions. Most importantly, as the Court has already discussed, the ALJ analyzed whether the treating physicians' opinions were consistent with the remaining evidence. Although the ALJ did not use the token words of "treating physician rule," he referenced the statutes which stand for that rule, 20 C.F.R. §§ 404.1527 and 416.927, as well as the Social Security Rulings that discuss it, SSRs 96-2p, 96-5p, and 06-3p.

Accordingly, the Court finds that the ALJ sufficiently applied the substance of the treating physician rule despite not explicitly reviewing the factors point by point.

For similar reasons, the Court does not believe that the ALJ was under any duty to contact Drs. Parker or Nicolosi. "The mere fact that the evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician." *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (summary order). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (quoting *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted)).

There are no gaps in the record here. The ALJ had the Plaintiff's complete medical history. The inconsistencies referenced by the ALJ were the result of the Plaintiff's breaks between treatment, as well as divergent opinions. The breaks were during the time which Plaintiff claims she was disabled. Divergent medical opinions, and conflicting evidence, are for the ALJ to resolve. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to

the Commissioner's resolution of conflicting evidence."); *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Therefore, the Court finds that the ALJ was not required to contact Drs. Nicolosi and Parker for clarification.

Accordingly, the Court finds that the ALJ properly applied the treating physician rule, and denies that portion of the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c).

### 3. As to Whether the ALJ Impermissibly Relied Upon the SDM When Determining the Plaintiff's RFC

The Defendant argues that the ALJ did not rely on the SDMs' determinations when he rendered a decision regarding the Plaintiff's RFC. The Plaintiff states that the R&R was correct in finding that the ALJ did rely on those determinations. The Court finds that the ALJ did not rely on the SDMs' assessments when he determined the Plaintiff's RFC.

Although the ALJ's RFC corresponded to the SDMs' assessments, "[t]he sheer fact that the ALJ's RFC assessment corresponds with the disability analyst's assessment does not establish that the ALJ gave controlling weight to or otherwise impermissibly relied on the disability analyst's assessment." *Stokes v. Astrue*, No. 7:10-CV-1129 MAD, 2012 WL 695856, at *14 (N.D.N.Y. Mar. 1, 2012); *see also Kikta v. Comm'r of Soc. Sec.*, 5:15-cv-60, 2016 WL 825259, at *8 (N.D.N.Y. Feb. 9, 2016) (finding that ALJ's RFC finding not tainted because it agreed with the SDM's assessment); *Raite v. Astrue*, 5:07-cv-679, 2010 WL 4781562, at *5 (N.D.N.Y. Nov. 17, 2010) ("The sheer fact that the ALJ's RFC assessment corresponds with the disability analyst's assessment does not establish that the ALJ gave controlling weight to or otherwise impermissibly relied on the disability analyst's assessment.") (internal citations omitted).

The ALJ did not state that he assigned any weight to the SDMs' assessments or that he treated them impermissibly as akin to medical opinions. Furthermore, as discussed above and below, the ALJ's RFC finding is supported by substantial evidence.

Therefore, the Court finds that the ALJ did not impermissibly rely on the SDMs' assessments. Accordingly, that portion of the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) is denied.

### 4. As to Whether the ALJ's Decision is Supported by Substantial Evidence

The Defendant contends that in the same way that substantial evidence did not support the medical opinions of Drs. Parker and Nicolosi, substantial evidence supports the ALJ's decision. The Plaintiff argues that the ALJ's decision is not so supported. In the Court's view, the ALJ's decision is supported by substantial evidence.

For the same reasons the Court found that the treating physicians' medical opinions were not supported by substantial evidence, the Court finds that the ALJ's decision is supported by substantial evidence. The Court again notes that this is a deferential standard—it is not a question of whether the Court would rule in the same manner as the ALJ if the Court were to decide the case *de novo*, *Mollo v. Barnhart*, 305 F. Supp. 2d 252, 260 (E.D.N.Y. 2004) (Spatt, J.)("[T]he court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon *de novo* review." (quoting *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks omitted))); or even whether there is substantial evidence to support the Plaintiff's claims, *Bonet*, 523 F. App'x at 59 ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." (citations omitted)).

The Court will not recite every piece of evidence that supports the ALJ's decision, because such a recitation was made above in Section II-E-2 where the Court discussed the ALJ's application of the treating physician rule. As discussed above, the treatments notes of Drs. Parker and Nicolosi contradicted their own medical opinions and supported the ALJ's decision; the notes of Drs. Sood, Steiner and Uh similarly supported the ALJ's decision; the November 16, 2013 MRI illustrated that there was no herniation; the Plaintiff had been inconsistent in seeking medical or palliative treatment, and in her statements regarding her back pain; the Plaintiff stopped working when she gave birth; and Dr. Skeene's findings, which recommended only moderate limitations, also supported the ALJ's decision.

Therefore, the Court finds that the ALJ's decision was supported by substantial evidence, and that portion of the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) is denied.

## III. CONCLUSION

Accordingly, the Court, after conducting a *de novo* review, adopts Section II of the R&R. For the foregoing reasons, the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) is denied; and the Defendant's motion for a judgment on the pleadings pursuant to Rule 12(c) is granted. The Plaintiff's complaint is dismissed.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York

March 31, 2017

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge